### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| 25 WESTERN AVENUE, LLC, a California limited liability company,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>ERIC LESTER, an individual; WARREN FORSYTHE, an individual; RE NO. ONE, LLC, a Nevada limited liability company; STARCORP, LLC, a Delaware limited liability company; MATTHEWS REAL ESTATE INVESTMENT SERVICES, INC, a Delaware corporation,<br><br>　　　　　　　Defendants. | Case No.<br><br>**COMPLAINT**<br><br>Jury Trial Demanded |

　　　Plaintiff 25 Western Avenue, LLC ("Plaintiff" or "25 Western") alleges as follows against defendants Eric Lester ("Lester"); Warren Forsythe ("Forsythe"); Re No. One, LLC ("RNO"), StarCorp, LLC ("StarCorp") and Matthews Real Estate Investment Services, Inc. ("Matthews" and together with Lester, Forsythe, RNO, and StarCorp, "Defendants").

### NATURE OF THE CASE

　　　1.　　Plaintiff brings this action to recover damages it suffered as a result of Defendants' fraudulent scheme to fleece Plaintiff's members, husband and wife, out of their life savings – a scheme which Defendants and their affiliates have been perpetrating against unsuspecting and unsophisticated investors for years.

1

2.     Plaintiff purchased commercial real property with an existing Hardee's franchise restaurant on the express basis that the seller of the property was also committed to a lucrative, long-term, triple-net lease to operate a Hardee's franchise restaurant on the property that ensured Plaintiff stable income for decades to come. The sales price for the property was approximately double the actual market value of the property, which was unbeknownst to Plaintiff due to its broker's participation in the fraudulent scheme.

3.     After the purchase agreement was signed, and consistent with their fraudulent scheme perpetrated against others, Defendants caused the lease to be entered into by a different entity than the seller.  Specifically, RNO was the seller and Defendants caused the lease to be entered into by StarCorp.  Plaintiff's was unaware that the seller and tenant were different entities.  After StarCorp signed the lease, it vacated the property and sought to terminate the lease by threatening to file bankruptcy if Plaintiff did not agree.

4.     Lester is the sole owner of RNO and StarCorp and Forsythe is the President and Chief Financial Officer for RNO and StarCorp.  Lester and Forsythe knew of StarCorp's precarious financial position prior to the purchase with the intention of repudiating the lease in an attempt to shield RNO from liability and allow it to walk away keeping Plaintiff's purchase money.  Lester and RNO made approximately $800,000 from flipping the property.  Plaintiff, in contrast, is left with an over-priced property without a lucrative long-term lease.

5.     After learning of several lawsuits against Lester's affiliated companies for the same conduct, Plaintiff discovered Defendants' conduct was part of a larger fraudulent scheme that has been ongoing for years and thus brings this suit to recover Plaintiff's damages.

## **PARTIES**

6.     25 Western is a California limited liability company and may be served with a copy of the summons and complaint by serving its registered agent or wherever its members may be found.  Each of the members of 25 Western are citizens of and domiciled in Oregon.

7.     On information and belief, Defendant Lester is an individual and citizen of Nevada and may be served with a copy of the summons and complaint at 500 West Goldfield Avenue, Yerington, Nevada 89447.

8.     On information and belief, Defendant Forsythe is an individual and citizen of Arizona and may be served with a copy of the summons and complaint at 532 W State Ave, Phoenix, AZ 85021.

9.     Defendant RNO is a Nevada limited liability company and may be served with a copy of the summons and complaint by serving its registered agent, Business Filings Incorporated, at 701 Carson St., STE 200, Carson City, Nevada 89701, or wherever its members may be found.  Defendant Lester is the sole member of RNO.  Defendant Forsythe is the President and CFO of RNO.

10.     Defendant StarCorp is a Delaware limited liability company and may be served with a copy of the summons and complaint by serving its registered agent, Registered Agent Solutions, Inc., at 9 E. Loockerman Street, Suite 311, Dover, Delaware 19901, or wherever its members may be found.  StarCorp is a franchisee of numerous Carl's Jr. and Hardee's restaurants in several states, including Illinois. Defendant Lester is the sole member of StarCorp.  Defendant Forsythe is the President and CFO of StarCorp.

11.     Defendant Matthews Real Estate Investment Services, Inc. is a Delaware corporation with a principal place of business located at 841 Apollo St., Suite 150, El Segundo, California 90245.

12.     On information and belief, in performing the acts and omissions alleged herein, and at all times relevant hereto, each of the Defendants were the agent, servant, alter ego, employee, and/or successor or predecessor in interest of each other, and was at all times acting within the course and scope of such relationship, with the knowledge, approval, consent, or ratification of each other.

13.     Lester formed numerous limited liability companies without sufficient assets between them which he used to fraudulent transfer money and properties in order to insulate himself from personal liability.  RNO and StarCorp are two such entities, each of which is organized and exists as a mere shell and sham without sufficient capital and assets and intended and used by Lester as devices to avoid individual liability and for the purpose of switching assets and limiting liabilities both between said entities and Lester who owns, influences, and controls each entity.

## JURISDICTION AND VENUE

14.     This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (general federal question statute), § 1332 (diversity) and under principles of pendent jurisdiction.

15.     The amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

16.     This Court has personal jurisdiction over all Defendants because the Defendants have purposefully availed themselves of doing business in the State of Illinois, owned, and/or operated the relevant property at issue in Oswego, Illinois (Kendall County).

17.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because the real property that is the subject of this action is situated in this District in Oswego, Illinois (Kendall County).

## FACTUAL ALLEGATIONS

18. Unbeknownst to Plaintiff until recently, since at least 2011, Lester and his controlled entities have been involved in a scheme to defraud commercial real estate investors using false promises of lucrative triple-net leases with high capitalization rates for Carl's Jr. and Hardees restaurants. RNO and StarCorp are Lester's most recent entities used to conduct his fraud.

19. As part of the fraudulent scheme, RNO offers for sale an investment consisting of real property on which a Carl's Jr. or Hardee's restaurant is operating that RNO has recently acquired or intends to acquire from a related entity.

20. As a part of that offer, RNO represents that one or more allegedly financially secure entities owned by Lester will operate a Carl's Jr. or Hardee's franchise restaurant and enter into an lucrative, long-term, triple-net lease with a high capitalization rate on the property. The leases are guaranteed by the franchise restaurant.

21. The attraction of a triple-net lease – which transfers the responsibility of the additional expenses related to operating the property, such as common area maintenance, property taxes, and building insurance, onto the tenant or lessee -- often entices unsophisticated passive investors.

22. RNO, or some other entity owned by Lester, purchases the property at fire sale prices due to the poor location and the inability of the prior franchise to operate profitably therefrom.

23. RNO then promptly resells the property at approximately double the original purchase price and the actual fair market value of the property, promising the purchasing investors a lease agreement under which the rental stream from the lease justifies the purchase price.

24. RNO thereafter causes StarCorp to reject the lease either in bankruptcy or under threats of bankruptcy to disavow the lease.

25.     On   information   and   belief,   Defendants   specifically   target unsophisticated real estate investors such as Plaintiff who are looking for a safe, low-risk  investment  given  that  their  investment  represents  their  life-savings.    For investors such as Plaintiff, purchasing real property that is subject to a triple-net lease with an investment grade tenant is precisely the sort of safe, low-risk investment that investors  such  as  Plaintiff  are  seeking.    Moreover,  Defendants  understand  that because Hardees and Carl's Jr. are well-known to unsophisticated investors who view them as amongst the most stable of businesses, the promise of acquiring real property subject to a long-term, triple net lease by these tenants is likely to induce unsophisticated investors not to conduct any significant due diligence concerning the transaction or Defendants.

26.     Unbeknownst to Plaintiff until recently, the checkered past of Lester and his controlled entities, such as Frontier Star 1, LLC, have been the subject of several lawsuits arising from similar conduct, including the following:

| Parties | Case Number | Court |
|---|---|---|
| Remur LLC<br>v.<br>Carl D. Levecke; Jason Levecke; Frontier Star 1, LLC | 2:15-cv-2180 | U.S. District Court of Arizona |
| John & Berna Bruzzone Family Partnership, LP<br>v.<br>Jason & Andrea LeVecke; Carl & Neisha LeVecke; MJC Holdings 123, LLC; Frontier Star 1, LLC; JC123 Holdings, LLC | CV2015-011053 | Maricopa County Superior Court |
|  |  |  |

| | | |
|---|---|---|
| Chamberlain Development LLC; Sun State Builders, Inc.; Charles W. Dietrich; Conchita S. Dietrich, as trustees of the Chuck and Connie Dietrich Revocable Trust v. Jason & Andrea LeVecke; Carl & Neisha LeVecke; MJKL Enterprises, LLC; Frontier Star 1, LLC | CV2015-012423 | Maricopa County Superior Court |
| Sun State Builders, Inc. v. Frontier Star 1, LLC | CC2015-208264 | Maricopa County Justice Courts |
| Raymond L. Walls & Terryll Ann Walls, as Co-Trustees of the Raymond L Walls and Terryll Ann Walls Declaration of Trust dated May 30, 2002, as amended July 18, 2013 v. MJC Holdings 123, LLC; Frontier Star 1, LLC; Jason LeVecke | 2015-M1-121672 | Cook County (IL) Court |
| Waterstone 34528 LLC v. Frontier Star I, LLC; Fox Velley & Safety Co.; Wright & Co.; Jason LeVecke; Carl LeVecke | 15L 00000759 | Lake County (IL) Court |
| The Pueden Family Trust v. Frontier Star 1, LLC; Carl LeVecke; Jason LeVecke | | Cook County (IL) Court |
| JMO Property LLC v. MJC Holdings, 123, LLC; Frontier Star 1, LLC; Jason LeVecke | 2015-M1-722207 | Cook County (IL) Court |
| Joan Emerson v. Chicago, Frontier Star, LLC, Frontier Star 1, LLC | 16 L 001235 | Circuit Court of Cook County, Illinois, County Department, Law Division |

| | | |
|---|---|---|
| Marlin Business Bank<br>v.<br>Frontier Star 1, LLC; Pizza Revolucion, LLC; Jason LeVecke; Carl LeVecke | 151101618 | Philadelphia County Court of Common Pleas |
| CSC Holdings, LLC<br>v.<br>JC123 Holdings, LLC f/k/a MJKL Enterprises Texas, LLC; Jason LeVecke; Frontier Star 1, LLC; Frontier Star, LLC f/k/a MJKL Enterprises Midwest, LLC; Frontier Star CJ, LLC, and MJKL Enterprises, LLC | | Bexar County (TX) Court |
| KMK Group, LLC; Nine Crown, LLC; Chicago 6034 W North Ave, LLC; Radcliff 33 W Dixie Blvd., LLC; Flint Land Company, LLC; HRDS Carbondale IL, LLC; HRDS Lisle IL, LLC; HRDS Springfield IL, LLC; Lavelo Property Management, LLC<br>v.<br>Jason LeVecke; Carl LeVecke; JC123 Holdings, LLC; LeVecke & Company, LLC; Andrea LeVecke; Neisha LeVecke | 15-cv-8140 | U.S. District Court for Northern District of Illinois |
| Ricardo Hector Abellan; Trinidad Alba Navarro De Abellan, Trustees of the Abellan Family Trust<br>v.<br>HRDS Leroy IL, LLC; La Velo Property Management, LLC; CSJR Phoenix Management, LLC; CSJR Phoenix AZ, LLC; Leonid Chernoy; David Zacharia; DZ Net Lease Realty, LLC & JC123 Holdings, LLC | 1:16-cv-01037 | U.S. District Court for Central District of Illinois |
| | | |

| Jun Watanabe; Walter Watanabe; Osamu Watanabe v. Jason Dominic Levecke; Carl D. Levecke; JC123 Holdings; Parviz Donboli; PGD Investment Properties, LLC; MIH Star HD, LLC | 2:16-cv-00734 | U.S. District Court for Central District of California |
| --- | --- | --- |
| Donna Y. T. Ching, as Trustee of the Ching Family Trust v. VRE Chicago Eleven, LLC; Verdad Real Estate, Inc.; EXP Realty Advisors, Inc.; Tartan Realty Group, Inc. | 4:16-cv-00428 | U.S. District Court for Northern District of Texas |

27.     Plaintiff is among Defendants' most recent victims.

28.     In 2017, the members of 25 Western, Connie Markovich and her husband Mike Markovich, were searching for a developed commercial real estate property to purchase for the investment of their life savings to support their retirement.  As part of their search, the Markovichs' hired Matthews to assist with the purchase of a property.

29.     An agent of Matthews, Andrew Ivankovich, served as RNO and StarCorp's broker for the sale of a property located at 2420 US-30, Oswego, Illinois 60543 (the "Property").  On information and belief, Matthews has served as a broker for the sale of several properties by entities controlled by Lester.

30.     On information and belief, on or about December 2017 or January 2018, RNO, Lester, StarCorp, and Forsythe delivered information to Matthews to attract potential purchasers for the Property.  On information and belief, that information represented that the Property was operated by StarCorp which successfully operated 145 Hardee's restaurant franchises and StarCorp was under contract to purchase the Property and was offering to sell the Property.  As part of the offer, StarCorp would enter into an attractive 20-year triple-net lease backed by

a corporate guarantee with a $1,600,000 purchase price based upon a 6% capitalization rate of annual rent to be set at approximately $94,400.

31.     Unbeknownst to 25 Western, RNO was the intended seller of the Property, not StarCorp.  RNO did not own the Property at the time.  Instead, the Property was owned by Hardee's Holdings Oswego, LLC, which was operated by Parviz Donboli.[1]  On information and belief, as part of RNO's scheme, RNO had an agreement to purchase the Property from Hardee's Holdings Oswego for approximately $800,000.  Once a buyer agreed to purchase the Property, RNO would complete the purchase from Hardee's Holdings Oswego and promptly resell the Property to the buyer for approximately $1,600,000.

32.     On January 4, 2018, 25 Western's broker, Dalton Barnes of Matthews, provided Connie Markovich with information he obtained from RNO and StarCorp's broker for the sale of the Property.  That information included (i) that the Property was operated by StarCorp which successfully operated 145 Hardee's restaurant franchises; (ii) StarCorp was under contract to purchase the Property and was offering to sell the Property; (iii) StarCorp was to enter into an attractive 20-year triple-net lease as part of the purchase; (iv) the purchase price was to be $1,600,000 based upon a 6% capitalization rate of annual rent to be set at approximately $94,400; and (v) the lease was to be secured by a corporate guarantee from StarCorp. None of the information provided by Defendants suggested that StarCorp or RNO was experiencing any financial distress.

33.     25 Western relied on the good faith and fiduciary duty owing to them by Matthews in believing that the Property was indeed worth the requested purchase

---

[1]     Mr. Donboli also serves as another real estate broker for Lester's controlled entities and has been a defendant in similar lawsuits involving Lester's controlled entities.

price of $1,600,000 because Matthews failed to disclose that the actual market value was approximately 50% of the requested purchase price.

34.     In reliance upon Defendants' representations, on or about January 5, 2018, Mr. Barnes drafted a Letter of Intent ("LOI") to RNO and StarCorp's broker, Andrew Ivankovich of Matthews, to purchase the Property for $1,600,000 based upon a capitalization rate of 6% of a rent to be set at approximately $94,400. Although Mr. Ivankovich was an agent of Matthews, the LOI did not mention Mr. Ivanovich's affiliation with Matthews. On information and belief, Mr. Barnes did not include Mr. Ivankovich's affiliation with Matthews because he wanted to hide the obvious conflict of interest in having Matthews represent both the buyer and seller.

35.     On February 20, 2018, RNO and 25 Western executed an Agreement for Purchase and Sale of Commercial Property ("Purchase Agreement") whereby 25 Western agreed to purchase the Property from RNO for $1,600,000. A copy of the Purchase Agreement is attached as **Exhibit 1**.

36.     The Purchase Agreement specified that RNO shall enter into "a triple net lease and shall provide for an initial twenty (20) year lease term with an initial annual Base Rent of $94,400.04 and 1.25% Base Rent annual cumulative increases."

37.     The Purchase Agreement further specified that "[RNO] and [25 Western] would not enter into this Agreement but for the Lease, and such Lease is an integral part of the consideration for [RNO] and [25 Western] entering into and consummating the transactions contemplated herein."

38.     Prior to the signing of the Purchase Agreement, Defendants knew that the tenant that was to enter into the lease would be different than the seller of the Property. Specifically, Defendants knew that RNO, as seller, would not enter into the lease on the Property but, rather, StarCorp would enter into the lease. Defendants

did not disclose to 25 Western that the seller of the Property would be different than the tenant in the Lease.

39.     Lester is the sole member of RNO and StarCorp.  Forsythe is the President and CFO of RNO and StarCorp.  At all relevant times, RNO, Lester, StarCorp, and Forsythe knew that StarCorp was losing at least $8,000,000 annually and would be unable to make its payments under the lease.

40.     Defendants did not disclose that StarCorp was in financial difficulty and would be unable to make its payments under the lease.  On information and belief, Defendants knew of StarCorp's precarious financial position prior to the execution of the Purchase Agreement with the intention of putting StarCorp into bankruptcy, or threatening bankruptcy, and rejecting the lease in an attempt to shield Lester and RNO from liability and allow them to walk away from the purchase keeping the money collected.

41.     In Section 5.2 of Purchase Agreement, RNO represented and warranted that there were "no pending adversarial actions, suits, arbitrations or proceedings at law or in equity (including, without limitation, foreclosure proceedings) against Seller or the Property affecting (i) all or any portion of the Property or in which Seller is a party by reason of Seller's ownership of the Property, (ii) Seller's ability to perform any of its obligations hereunder, (iii) the use of the Property or (iv) the condition of the Property; and (b) no attachments, execution proceedings, assignments for the benefit of creditors, insolvency, bankruptcy, reorganization or other similar proceedings are pending or, to Seller's knowledge, threatened against Seller, nor are any of such proceedings contemplated by Seller."

42.     At the time RNO signed the Purchase Agreement, RNO had claims threatened and pending against it in the bankruptcy action captioned *In re Frontier Star, LLC et al.*, Case No. 2:15-bk-09383-EPB in the United States Bankruptcy Court for the District of Arizona, where the Liquidating Trustee determined that

RNO and Lester received cash distributions of approximately $1.8 million in the one-year period prior to the Frontier Star bankruptcy filing.

43.     On March 9, 2018, 25 Western, as landlord, entered into a Lease Agreement ("Lease") with StarCorp, as tenant, for the Property. A copy of the Lease is attached as **Exhibit 2**.

44.     The Lease provided for an initial twenty (20) year term with an initial monthly Base Rent of $7,866.67 per calendar month [$94,400.04 annualized] through December 31, 2018 and 1.25% Base Rent annual cumulative increases. The Lease also provided that StarCorp shall not assign or sublet the Property without the prior written consent of 25 Western in each instance.

45.     The Lease was "an absolute 'bond equivalent' net net net return to [25 Western] and [StarCorp] shall pay all costs and expenses relating to the Premises and [StarCorp's] operations thereon."

46.     Pursuant to Section 5.1 of the Lease, StarCorp agreed that it received the Property in good condition, repair, and appearance and it would keep and maintain the Property in good condition and repair at its own expense. StarCorp agreed to promptly make all "changes and repairs or replacements of every kind which may be required to be made to keep and maintain the Premises in such good condition, repair and appearance."

47.     On or about May 2019, StarCorp vacated the Property and sublet the Property to a local restaurant, RV's Home of the Hoagy, Inc., without notifying or obtaining the consent of 25 Western.

48.     Seven months later, on December 6, 2019, StarCorp notified 25 Western that Starcorp "unfortunately had to close our Hardee's . . . We were however able to find another local tenant to lease the property from us while we continue to pay our rent to you. . . . I'm attaching the sub-lease for your records and to make sure there are no concerns regarding it before the lease commences."

13

49.     25 Western asked StarCorp's President and CFO, Forsythe, if StarCorp had a signed contract with the new tenant and added that 25 Western would respond with any objections to the sublease after speaking with its attorney.

50.     Forsythe responded to 25 Western that he "had given approval to the tenant based on your previous response which I took as approval." However, StarCorp's purported approval to sublease the Property could not have been based on 25 Western's correspondence because StarCorp had already subleased the Property seven months prior to 25 Western's correspondence.

51.     On or about March 30, 2020, StarCorp notified 25 Western that StarCorp would not pay rent for April, May, and June of 2020 due to StarCorp's financial decline as a result of the COVID-19 pandemic. StarCorp has failed to pay any rent afterwards.

52.     On or about July 3, 2020, 25 Western provided notice to StarCorp that StarCorp was in default of the Lease for failing to pay rent. 25 Western also provided notice of StarCorp's potential default of the Lease to the extent StarCorp believed the sublease was effective.

53.     In December 2020, StarCorp offered to pay 25 Western $238,000 in exchange for terminating the Lease. StarCorp stated that the $238,000 payment would come from Lester as a loan to StarCorp. StarCorp added that if it could not come to an arrangement with 25 Western, StarCorp would file for bankruptcy and the Lease would be rejected.

54.     On or about March 3, 2021, 25 Western filed an eviction complaint in the Kendall County, Illinois Circuit Court to obtain possession of the property, past due rent, and rent due through the date of judgment. The eviction proceeding is pending.

55.     The financial impact on 25 Western has been devastating. In August 2021, 25 Western discovered that the current value of the Property was

approximately half of what 25 Western was induced to pay for the Property on the basis of StarCorp's 20-year triple net Lease.

## FIRST CLAIM FOR RELIEF

### (Fraudulent Inducement Against All Defendants)

56.     25 Western repeats and incorporates by this reference each and every allegation contained in the preceding paragraphs as though set forth in full.

57.     Prior to entering into the Purchase Agreement, Defendants made a number of false representations to 25 Western, in order to induce 25 Western to enter into the Purchase Agreement.

58.     On or about January 4, 2018, 25 Western's broker, Dalton Barnes of Matthews, provided Connie Markovich with information he obtained from RNO, Lester, StarCorp and Forsythe regarding the sale of the Property.  In providing the information to Matthews, RNO, Lester, StarCorp and Forsythe intended that it be provided in turn to 25 Western.  The information provided to Ms. Markovich of 25 Western represented (i) that the Property was operated by StarCorp which successfully operated 145 Hardee's restaurant franchises; (ii) StarCorp was under contract to purchase the Property and was offering to sell the Property; (iii) StarCorp was to enter into an attractive 20-year triple-net lease as part of the purchase; (iv) the purchase price was to be $1,600,000 based upon a 6% capitalization rate of annual rent to be set at approximately $94,400; and (v) the lease was to be secured by a corporate guarantee from StarCorp.  None of the information provided by RNO and Matthews suggested that StarCorp or RNO was experiencing any financial distress.

59.     Between January 5, 2018 and February 20, 2018, Defendants continued to make the above false representations to Ms. Markovich through drafts of the Purchase Agreement provided by RNO's attorney.

60. On or about February 20, 2018, RNO and Lester represented to Ms. Markovich through drafts of the Purchase Agreement that there were no pending adversarial actions, suits, arbitrations or proceedings at law or in equity (including, without limitation, foreclosure proceedings) against RNO or the Property affecting (i) all or any portion of the Property or in which RNO is a party by reason of RNO's ownership of the Property, (ii) RNO's ability to perform any of its obligations hereunder, (iii) the use of the Property or (iv) the condition of the Property; and (b) no attachments, execution proceedings, assignments for the benefit of creditors, insolvency, bankruptcy, reorganization or other similar proceedings are pending or, to RNO's knowledge, threatened against Seller, nor are any of such proceedings contemplated by Seller.

61. All of the foregoing facts were material to 25 Western's purchase of the Property. Had 25 Western known of such facts, or any of them, it would not have proceeded with the purchase of the Property.

62. Defendants made the foregoing false representations knowing the same to be false, or without any reasonable basis for believing they were true, and with intent to deceive 25 Western so that RNO could unload a troubled asset for significant profit and Matthews could earn commissions, all at 25 Western's expense.

63. 25 Western relied on the foregoing false representations, their reliance was reasonable, and 25 Western was in fact deceived by the false representations.

64. As a direct and proximate result of the foregoing, 25 Western was fraudulently induced to enter into the Purchase Agreement and purchase the Property.

65. As a direct and proximate result of the foregoing, 25 Western has been damaged in an amount to be proven at trial, but in an amount no less than $800,000.

16

66.     Defendants' actions were willful, wanton, malicious, outrageous, and undertaken in reckless disregard of 25 Western's rights and interests, so as to warrant the imposition of punitive damages against each of them.

WHEREFORE, 25 Western respectfully requests, pursuant to this Count, that the Court enter judgment in its favor, and against Defendants, jointly and severally; award to 25 Western general and special damages in an amount to be proven at trial, but in an amount no less than $800,000; award to 25 Western punitive damages from each of the Defendants; award to 25 Western from Defendants, jointly and severally, pre- and post-judgment interest; award to 25 Western from Defendants, jointly and severally, the costs of this action, including reasonable attorney's fees; and enter such other and additional relief as the Court deems just and appropriate.

<u>SECOND CLAIM FOR RELIEF</u>

**(Breach of Contract – Purchase Agreement - Against RNO)**

67.     25 Western repeats and incorporates by this reference each and every allegation contained in the preceding paragraphs as though set forth in full.

68.     The Purchase Agreement is a valid and enforceable contract.

69.     Except by reason of the actions of RNO excusing any further acts by 25 Western, 25 Western has performed each and all of the terms, covenants and conditions of the Purchase Agreement to be performed by 25 Western.

70.     Pursuant to Section 3.6 of the Purchase Agreement, RNO agreed that it would enter into a lease as tenant of the Property that "shall be a triple net lease and shall provide for an initial twenty (20) year lease term with an initial annual Base Rent of $94,400.04 and 1.25% Base Rent annual cumulative increases."

71.     The Purchase Agreement further specified that "[RNO] and [25 Western] would not enter into this Agreement but for the Lease, and such Lease is

17

an integral part of the consideration for [RNO] and [25 Western] entering into and consummating the transactions contemplated herein."

72. RNO materially breached the Purchase Agreement by causing StarCorp, and not RNO, to enter into the Lease.

73. RNO caused StarCorp to enter into the Lease, at least in part, because RNO knew that StarCorp was losing at least $8,000,000 annually and StarCorp could file for bankruptcy and reject the lease in an attempt to shield Lester and RNO from liability and allow them to walk away from the purchase keeping the money collected.

74. Under Section 5 of the Purchase Agreement, RNO materially breached its representations and warranties to 25 Western.

75. Pursuant to Section 5.2 of Purchase Agreement, RNO represented and warranted that there were "no pending adversarial actions, suits, arbitrations or proceedings at law or in equity (including, without limitation, foreclosure proceedings) against Seller or the Property affecting (i) all or any portion of the Property or in which Seller is a party by reason of Seller's ownership of the Property, (ii) Seller's ability to perform any of its obligations hereunder, (iii) the use of the Property or (iv) the condition of the Property; and (b) no attachments, execution proceedings, assignments for the benefit of creditors, insolvency, bankruptcy, reorganization or other similar proceedings are pending or, to Seller's knowledge, threatened against Seller, nor are any of such proceedings contemplated by Seller."

76. These representations were material to 25 Western, and were inaccurate at the time they were made. At the time RNO signed the Purchase Agreement, RNO had threatened claims against it, including, in the bankruptcy action captioned *In re Frontier Star, LLC et al.*, Case No. 2:15-bk-09383-EPB in the United States Bankruptcy Court for the District of Arizona, where the Liquidating Trustee

determined that RNO and Lester received cash distributions of approximately $1.8 million in the one-year period prior to the bankruptcy filing.

77.    As a direct and proximate result of RNO's breaches, 25 Western has sustained general and special damages in an amount to be set forth at trial, but in an amount no less than $800,000.

78.    Pursuant to Section 8.7 of the Purchase Agreement, 25 Western is entitled to recover "all costs and reasonable attorneys' fees" to enforce the Purchase Agreement or any instrument executed pursuant to the Purchase Agreement, or by reason of any breach hereunder.

WHEREFORE, 25 Western respectfully requests, pursuant to this Count, that the Court enter judgment in its favor and against RNO; award to 25 Western general and special damages in an amount to be proven at trial, but in an amount no less than $800,000; award to 25 Western from RNO, pre- and post-judgment interest; award to 25 Western from RNO, the costs of this action, including reasonable attorney's fees; and enter such other and additional relief as the Court deems just and appropriate.

### THIRD CLAIM FOR RELIEF

**(Breach of Contract – Lease Agreement - Against StarCorp)**

79.    25 Western repeats and incorporates by this reference each and every allegation contained in the preceding paragraphs as though set forth in full.

80.    The Lease is a valid and enforceable contract.

81.    Except by reason of the actions of StarCorp excusing any further acts by 25 Western, 25 Western has performed each and all of the terms, covenants and conditions of the Lease to be performed by 25 Western.

82.    StarCorp breached the Lease in many respects, including, but not limited to, failing to pay rent, failing to pay utilities, failing to pay property taxes,

failing to maintain the Property, abandoning the Property, and engaging in other acts that will be set forth at trial.

83.     As a direct and proximate result of StarCorp's breaches, 25 Western has sustained general and special damages in an amount to be set forth at trial, including, but not limited to the costs to re-let the Property to a new tenant estimated to be at least $389,000, significant damages to the Property totaling at least $168,000 to repair, attorney's fees and costs incurred addressing StarCorp's default of the Lease and the present litigation.

84.     Pursuant to Section 8.7 of the Purchase Agreement, 25 Western is entitled to recover "all costs and reasonable attorneys' fees" to enforce the Purchase Agreement or any instrument executed pursuant to the Purchase Agreement (such as the Lease) or by reason of any breach hereunder.

WHEREFORE, 25 Western respectfully requests, pursuant to this Count, that the Court enter judgment in its favor and against StarCorp; award to 25 Western general and special damages in an amount to be proven at trial, but in an amount no less than $557,000; award to 25 Western from StarCorp, pre- and post-judgment interest; award to 25 Western from StarCorp, the costs of this action, including reasonable attorney's fees; and enter such other and additional relief as the Court deems just and appropriate.

## FOURTH CLAIM FOR RELIEF

### (Violation of 18 U.S.C. § 1962 (c) and (d) - Against All Defendants)

85.     25 Western repeats and incorporates by this reference each and every allegation contained in the preceding paragraphs as though set forth in full.

86.     18 U.S.C. § 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or

indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

87.    18 U.S.C. 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

88.    The scheme described in the preceding paragraphs constitute a violation of Sections 1962(c) and (d):

　　　　a.    The scheme involves multiple entities formed and operating in multiple states and persons that are engaged in or affect interstate commerce: StarCorp is the licensee of numerous Hardee's restaurants in at least Illinois and Arizona that are engaged in interstate commerce through their purchase of goods, and also the informal association of the Defendants as an association in fact, created to sell properties to investors in interstate transactions based on false and misleading representations.

　　　　b.    The scheme involves racketeering activity comprised of mail fraud and wire fraud, in that the Defendants and their agents sent false and misleading documents containing information regarding StarCorp, the Property, the Purchase Agreement, the Lease, and the corporate guarantees to 25 Western through the United States Mail and through e-mails, and otherwise communicated directly and through their agents, with 25 Western by e-mail to affect the transactions.

　　　　c.    The scheme involved not only the transactions involving the Property and 25 Western, but, on information and belief, several other properties.

　　　　d.    The scheme involved a pattern of racketeering activity in that it

extended for several years of Defendants flipping properties with sales prices based on leases with successful Hardee's franchises but which leases were disavowed or rejected through bankruptcy.

e.     The scheme also involved a conspiracy among all of the Defendants to engage in racketeering activity as alleged herein.

WHEREFORE, 25 Western respectfully requests, pursuant to this Count, that the Court enter judgment in its favor, and against Defendants, jointly and severally; award to 25 Western general and special damages in an amount to be proven at trial, but in an amount no less than $800,000; award to 25 Western from Defendants, jointly and severally, pre- and post-judgment interest; award to 25 Western from Defendants, jointly and severally, the costs of this action, including reasonable attorney's fees; and enter such other and additional relief as the Court deems just and appropriate.

## FIFTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty - Against Matthews)

89.     25 Western repeats and incorporates by this reference each and every allegation contained in the preceding paragraphs as though set forth in full.

90.     Matthews as broker to 25 Western for the purchase of the Property, owed a fiduciary duty to 25 Western to act with the duties of loyalty, disclosure, care, and good faith.

91.     25 Western was entitled to, and did, place trust and confidence in Matthews in light of its fiduciary obligations.

92.     Matthews' brokers breached their fiduciary duties and advanced their own interests at the expense of 25 Western's interests by, among other things, (i) not advising 25 Western that the purchase price of the Property was approximately twice the market value of the Property; (ii) not advising 25 Western that the seller of the property was RNO rather than StarCorp; (iii) structuring the sale of the Property so

that agents for Matthews represented both the seller and the purchaser of the Property; and (iv) concealing from 25 Western that Matthews also represented the seller of the Property.

93.     Matthews had a fiduciary obligation to disclose to 25 Western that Matthews represented the seller of the Property would receive commissions from both the seller and 25 Western because of its dual representation.  Rather than disclose this conflict of interest, Matthews hid its dual representation from 25 Western.

94.     Matthews received $96,000 as a result of its dual representation.

95.     Matthews' breach of its fiduciary duties was a substantial factor in causing harm to 25 Western.  As a direct and proximate result of Matthews' breach of its fiduciary duty, 25 Western has suffered damages in an amount to be determined at trial.

96.     Matthews' actions were willful, wanton, malicious, outrageous, and undertaken in reckless disregard of 25 Western's rights and interests, so as to warrant the imposition of punitive damages against it.

WHEREFORE, 25 Western respectfully requests, pursuant to this Count, that the Court enter judgment in its favor, and against Matthews; award to 25 Western general and special damages in an amount to be proven at trial, but in an amount no less than $800,000; award to 25 Western punitive damages from Matthews; award to 25 Western from Matthews, pre- and post-judgment interest; award to 25 Western from Matthews, the costs of this action, including reasonable attorney's fees; and enter such other and additional relief as the Court deems just and appropriate.

Dated: May 20, 2022     Respectfully submitted,


         __/s/Marty J. Schwartz_____
         Marty Schwartz (Attorney No. 3124462)
         Schain, Banks, Kenny & Schwartz, Ltd.
         70 W. Madison Street, Suite 2300
         Chicago, Illinois 60602
         (312) 345-5700
         mschwartz@schainbanks.com

         Michael D. Adams (*Pro Hac Vice Application to Be Submitted*)
         Seth M. Jessee (*Pro Hac Vice Application to Be Submitted*)
         RUTAN & TUCKER, LLP
         18575 Jamboree Road, 9th Floor
         Irvine, California 92612
         (714) 641-5100
         madams@rutan.com
         sjessee@rutan.com

         *Attorneys for Plaintiff,*
         *25 Western Avenue, LLC*

## JURY TRIAL DEMANDED

Plaintiff 25 Western Avenue, LLC, demands a trial by jury on all claims so triable.

Dated: May 20, 2022               Respectfully submitted,

                     /s/Marty J. Schwartz

Marty Schwartz (Attorney No. 3124462)
Schain, Banks, Kenny & Schwartz, Ltd.
70 W. Madison Street, Suite 2300
Chicago, Illinois 60602
(312) 345-5700
mschwartz@schainbanks.com

Michael D. Adams (*Pro Hac Vice Application to Be Submitted*)
Seth M. Jessee (*Pro Hac Vice Application to Be Submitted*)
RUTAN & TUCKER, LLP
18575 Jamboree Road, 9th Floor
Irvine, California 92612
(714) 641-5100
madams@rutan.com
sjessee@rutan.com

*Attorneys for Plaintiff,*
*25 Western Avenue, LLC*